DICKEY & CAMPBELL LAW FIRM, PLC
301 E. Walnut Street, Ste. 1
Des Moines, Iowa 50309
515-288-5008
515-288-5010 Fax
Attorneys for:
Plaintiff Sakonnet Capital Partners II, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SAKONNET CAPITAL PARTNERS II, LLC,

              Plaintiff,           :

    -against-                        :

WILD BUNCH, S.A.;                   :
FORBES LTD; and MULTICONTINENTAL
DISTRIBUTION LTD,                :

            Defendants.      :
-------------------------------------------------------------X

COMPLAINT
(Jury Trial Demanded)

1:18-cv-2118

COMES NOW, Plaintiff Sakonnet Capital Partners II, LLC, by and through the undersigned attorney, and hereby files this Civil Complaint against Defendants Wild Bunch, S.A., Forbes LTD, and Multicontinental Distribution LTD. Plaintiff hereby demands a jury trial of all of the issues arising out of the matters pled herein. Plaintiff alleges upon personal knowledge as to themselves and their own acts, and upon information and belief upon the investigation of counsel as to all other matters, as follows:

## PARTIES

1. Plaintiff Sakonnet Capital Partners II, LLC, is a Delaware limited liability company with a principal place of business of 385 South Main Street, Lower Level, Providence, RI 02903 (hereinafter "Sakonnet").

2. Defendant Wild Bunch, S.A., is a film distribution company headquartered in Paris, France, with an address of 99, rue de la Verrerie, Paris 75004, France (hereinafter "Wild Bunch").

3. Defendant Multicontinental Distribution LTD is a company based in London, with an address of 5th Floor, 86 Jermyn Street, London, SW1Y6AW, United Kingdom (hereinafter "Multicontinental").

4. Defendant Forbes LTD is a company based in Dubai, United Arab Emirates, with an address of office 303, Al Attar Business Tower, Sheik Zayed Road, PO Box 9968, Dubai, United Arab Emirates (hereinafter "Forbes").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332(a)(2) and (b) because Plaintiff is a citizen of a State and Defendants are each citizens of foreign states, and the amount in controversy exceeds $75,000.00.

6. Venue is proper in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. 1391(b)(2), in that a substantial part of the claim arose within the Southern District of New York.

## STATEMENT OF THE CASE AND FACTUAL ALLEGATIONS

7. June Project Productions, Inc., a New York corporation, and June Project, LLC, a New York limited liability company (collectively "June Project") were in the business of filmmaking.

8. In 2013, June Project began making a motion picture originally entitled *"June Project"* and later entitled "*Welcome to New York.*"

9. Sakonnet lent money to June Project pursuant to a written Tax Credit Loan and Security Agreement, a Borrowing Certificate, and a Promissory Note (hereinafter collectively the "Tax Credit Agreement"), attached to this Complaint as Exhibit 1.

10. The Tax Credit Agreement required June Project to pay Sakonnet in part through the assignment of New York State film tax credits.

11. If the New York State film tax credits were less than the total amount due under the other provisions of the Tax Credit Agreement, June Project was required to pay that shortfall to Sakonnet.

12. June Project was also required under the Tax Credit Agreement to pay any and all costs and attorney fees Sakonnet generated in enforcing the agreement.

13. As part of the Tax Credit Agreement, June Project agreed that Sakonnet would be party to a "Waterfall", attached as Exhibit B to the Tax Credit Agreement, which identified Sakonnet as the "Tax Credit Lender" and which read:

Exhibit B

WATERFALL

All sums derived from the sale and exploitation of the Film and all related rights in perpetuity in the entire world, with respect to the Film or otherwise credited to the Film without any deduction whatsoever ("**Gross Receipts**"), shall be applied and allocated on a continuing and cumulative basis in the following order and priority:

1. First, toward payment of any collection account fees and expenses.
2. Second, to payment of applicable Screen Actors Guild (Company acknowledges that no other guild shall be attached to the Film) residuals due in connection with the Film;
3. Third, to payment of the Wild Bunch Sales Fee of 18%;
4. Fourth, Wild Bunch shall be entitled to retain an amount equal to the aggregate of the Sales Expenses (as defined below), such amount not to exceed US $75,000 without the Company's prior written agreement, and the Additional Sales Expenses (as defined below);
5. Fifth, to the Tax Credit Lender until recoupment of any Shortfall;
6. Sixth, until recoupment by Multicontinental of US $900,000 and recoupment by Forbes of US $900,000, thirty-seven point five percent (37.5%) to Multicontinental, thirty-seven point five percent (37.5%) to Forbes and twenty-five percent (25%) to Wild Bunch;
7. Seventh, until recoupment by Wild Bunch of the balance of the Financing, ten percent (10%) to Multicontinental, twenty-five percent (25%) to Forbes and sixty-five percent (65%) to Wild Bunch;
8. Eighth, to payment of a USD$50,000 deferred payment to Christ Zois; and thereafter
9. Net profits shall be allocated as follows:

    Eighteen percent (18%) to Wild Bunch;
    Nine and four tenths percent (9.4%) to Multicontinental;
    Twenty-three and six tenths percent (23.6%) to Forbes;
    Twenty percent (20%) to Gérard Depardieu;
    Five Percent (5%) to Jacqueline Bisset;
    Seven Percent (7%) to Abel Ferrara;
    Seven Percent (7%) to Christ Zois;

    Five Percent (5%) to Adam Folk;
    Two and one-half percent (2.5%) to Ken Kelsch; and
    Two and one-half percent (2.5%) to Anthony Redman.

14. Defendant's Wild Bunch, Multicontinental and Forbes also loaned money to June Project for the production of *Welcome to New York.*

15. Prior to loaning money to June Project, Defendant Wild Bunch and its agents and employees had reviewed June Project's financing documents, which included the Tax Credit Agreement.

16. Defendant Wild Bunch knew, and reviewed, the Waterfall that had been included in the Tax Credit Agreement, prior to loaning money to June Project.

17. Defendants Multicontinental and Forbes also received, and reviewed, June Project's financing documents, which included the Tax Credit Agreement, prior to lending money to June Project.

18. After completion of *Welcome to New York*, Sakonnet did eventually receive payment for some tax credits from the State of New York, but not until December 31, 2015, well after June Project was in default under the Tax Credit Agreement.

19. After Sakonnet received payment for the tax credits, there was a significant shortfall as anticipated by the Tax Credit Agreement.

20. Freeway Cam B.V. was a Netherlands company tasked with administering the Waterfall from the sales of *Welcome to New York*.

21. When Sakonnet went to collect the shortfall from Freeway Cam B.V. under the Waterfall as it had been represented to Sakonnet by June Project in their written contract, Sakonnet discovered that the Waterfall submitted to Freeway Cam B.V. had been altered from the version Sakonnet had received as part of the Tax Credit Agreement.

22. At some point in time between the time Sakonnet and June Project signed the Tax Credit Agreement and the time Freeway Cam B.V. had been given the Tax Credit Agreement by June Project and Defendant Wild Bunch, Defendants had collectively altered the Waterfall without Sakonnet's knowledge or consent.

23. Specifically Defendant Wild Bunch had signed a Collection Account Management Agreement ("CAMA") that excluded Sakonnet from the Waterfall as expressly prohibited in paragraph 10 of the Tax Credit Agreement.

24. Sakonnet was never made a party to the CAMA, nor made part of the Waterfall, as required by the Tax Credit Agreement.

25. The Waterfall that Defendant Wild Bunch had negotiated and signed, and Defendants Multicontinental and Forbes had approved and negotiated, excluded paragraph 5 of the Waterfall as it had been presented to Sakonnet, effectively eliminating Sakonnet from its fifth place position in the Waterfall.

26. Defendants knew that Sakonnet had been eliminated from the CAMA and the Waterfall before they signed the CAMA and agreed to the altered Waterfall.

27. Upon receipt of sales and income from *Welcome to New York*, Freeway Cam B.V. began distributing the proceeds pursuant to the second, altered Waterfall they had been given, which excluded Sakonnet.

28. A total of $1,127,198 of proceeds were actually distributed to recipients that should have been lower in priority in the Waterfall than Sakonnet.

29. Multicontinental received $401,564 of proceeds from *Welcome to New York* as a result of their altered position in the Waterfall which would have been below Sakonnet's position in the Waterfall had the Waterfall not been changed prior to it being sent to Freeway Cam B.V.

30. Forbes received $401,564 of proceeds from *Welcome to New York* as a result of their altered position in the Waterfall which would have been below Sakonnet's position in the Waterfall had the Waterfall not been changed prior to it being sent to Freeway Cam B.V.

31. Wild Bunch received $267,710 of proceeds from *Welcome to New York* as a result of their altered position in the Waterfall which would have been below Sakonnet's position in the Waterfall had the Waterfall not been changed prior to it being sent to Freeway Cam B.V.

32. When presented with an opportunity to amend the CAMA and Waterfall after the erroneous omission of Sakonnet from the Waterfall to include

Sakonnet in the Waterfall, Wild Bunch refused to sign the amendment, preventing Freeway from including Sakonnet in the Waterfall.

33. As of April 30, 2017, Sakonnet had suffered at least $227,104.38 in damages that Sakonnet would have recovered but for Wild Bunch, Multicontinental, and Forbes receiving monies they should not have received from the Waterfall, as evidenced by an arbitration award against June Project to the benefit of Sakonnet.

34. Sakonnet continues to accumulate attorney fees, interest, and other costs as a result of Defendants' actions.

## CLAIMS FOR RELIEF

### COUNT I – UNJUST ENRICHMENT (ALL DEFENDANTS)

35. Defendants Wild Bunch, Forbes, and Multicontinental were all unjustly enriched by their actions.

36. Wild Bunch, Forbes and Multicontinental all benefitted at the expense of Sakonnet.

37. Equity and good conscience require the Defendants to make restitution to Sakonnet.

### COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT (ALL DEFENDANTS)

38. Sakonnet had a valid contract with June Project.

39. Defendants Wild Bunch, Forbes, and Multicontinental each knew of Sakonnet's contract with June Project.

40. Defendants Wild Bunch, Forbes, and Multicontinental intentionally and improperly procured a breach of that contract by June Project in negotiating, signing, and accepting the CAMA and by receiving proceeds from the changed Waterfall that they would not have received under the Waterfall in the Tax Credit Agreement.

41. Sakonnet suffered substantial damages as a result of Defendants' actions.

## COUNT III – REFORMATION (ALL DEFENDANTS)

42. There was an agreement other than the agreement referenced in the CAMA.

43. The CAMA signed by June Project and Wild Bunch was intended by Sakonnet to include Sakonnet as evidenced by the Waterfall in the Tax Credit Agreement.

44. Defendants and June Project's actions were fraudulent, whereas Sakonnet's actions in not being in the CAMA were a mistake and unintentional.

45. In light of all of the circumstances above, Sakonnet is entitled to a reformation of the CAMA to include Sakonnet in the Waterfall at position five.

## RELIEF REQUESTED

46. Plaintiff should be awarded from Defendants all damages resulting from June Project's breach of the Tax Credit Agreement, including the $227,104.38 amount ordered to be paid by June Project to Plaintiff as a result of an arbitration award for the breach.

47. Plaintiff should be awarded from Defendants all costs, expenses, and attorney fees of pursing this action.

48. Plaintiff should receive a reformation of the CAMA to place Plaintiff at paragraph 5 of the CAMA's Waterfall provision.

## JURY TRIAL DEMAND

49. Plaintiff demands a jury on all issues.


Dated:  3/18/2018



Dickey & Campbell Law Firm, PLC

Attorneys for Plaintiff

By: s/ Angela L. Campbell

Angela L. Campbell
Dickey & Campbell Law Firm, PLC
301 E. Walnut Street, Ste 1
Des Moines, IA 50309
Telephone:  (515) 288-5008
Facsimile: (515) 288-5010
Email:  angela@dickeycampbell.com